262 P.2d 281

**MALONEY v. SALT LAKE CITY.**

No. 7926.

Supreme Court of Utah.

Oct. 27, 1953.

Clyde & Mecham, Robert C. Gibson, Franklin J. Allan, Salt Lake City, for appellant.

Christensen, Holmgren & Kesler, Gayle Dean Hunt, Salt Lake City, for respondent.

WADE, Justice.

This is an action to recover damages for personal injuries suffered when a section of the city sidewalk collapsed, causing Michael V. Maloney, plaintiff and appellant herein, to fall. The case was tried to a jury. The verdict was in favor of the plaintiff but the court granted the defendant's motion for a verdict, and the plaintiff appeals.

On November 28, 1951, plaintiff was walking west on the north side of South Temple Street in Salt Lake City, Utah. As he approached the corner of South Temple and State, he stepped on a section of city sidewalk directly opposite the entrance of the Eagle Gate Apartments at 105 East South Temple, which section collapsed under him, causing him to fall to the sidewalk, striking his forehead, and injuring his knee and face.

Plaintiff brings action against Salt Lake City for negligently maintaining the sidewalk which collapsed. He contends that the sidewalk which collapsed had been cracked and slightly sunken for a long period of time prior to this accident and had been obviously defective and constituted a hazard to those using it. He argues that the sidewalk was in such a cracked and sunken condition for a long period of time that it was obviously dangerous for those using it in that it could readily be seen that people using it were apt to trip and fall over it. That this gave the city notice of the defective condition. That although

this condition did not notify the city that there was a hollow space under the sidewalk about three feet across and fourteen inches deep and that therefore it was in danger of collapsing as it did, the city did have notice that it was defective and presented a hazardous condition in that it was apparent that people were in danger of stumbling over the cracked and sunken condition, and although this was a slightly different danger than that which could be reasonably foreseen, still the city is liable because the condition was the direct cause of this accident and the city had warning that there was danger of a different kind of an accident.

In order to support this claim, the evidence must show that for some period of time before the accident, the sidewalk which collapsed was in such a condition that it obviously presented a hazard to those using it sufficient to give the city notice that there was a dangerously defective condition which it negligently failed to correct. Only if the evidence will reasonably support a finding to that effect when construed most favorably to appellant can we reverse the judgment of the trial court. In this respect we think appellant's evidence fails to support a finding in his favor.

Appellant, himself, could not state that the sidewalk was in a defective condition before the accident, although he had previously used the sidewalk in question many times. Five days after the accident, however, he did examine the sidewalk and noted

that it was cracked and that the section of sidewalk which did not collapse slanted toward the hole, and at the point of the break there was a difference in elevation of the city sidewalk and that of the Eagle Gate Apartments entrance sidewalk of "fully an inch" on the east side of the hole and a half inch on the west side, the Eagle Gate sidewalk on the north being the higher.

The only other witness for appellant on the condition of the sidewalk itself was an employee of the State Engineer's Office, holding an engineering degree from the University of Utah. He examined the scene of the accident about ten months after the accident took place, and after the sidewalk had been repaired. He testified that the cracks in the sidewalk still visible after the patch was made were four to five years old and the sidewalk slanted downward toward the patch itself. Also that there is a crack in the Eagle Gate sidewalk which had a difference of one-half inch in elevation three inches north of the city sidewalk, three-fourths inch at eleven inches north of the city sidewalk, and three-fourths inch at thirty inches north of the city sidewalk. This difference in elevation was not at the place where the accident occurred but north thereof on the apartment house sidewalk. He stated that the crack was at least four years old, but that any estimate as to how long the difference in elevation had existed would be a "pure guess."

The respondent produced several witnesses who testified that they had examined the sidewalk before the accident many times, and that, although there were some cracks in the sidewalk, there were none of a nature which would present a hazard to a pedestrian using that particular sidewalk.

Thus, if we accept the evidence as presented by the appellant we would find that there did exist cracks in the sidewalk prior to the accident and that after the sidewalk fell there was a difference in elevation between the concrete on each side of the cracks, which might present an obvious hazard. However, we have no evidence that even such a difference in elevation existed before the accident, and thus no evidence that an actionable defect existed before the accident took place.

The district court, therefore, did not err in granting the motion for a directed verdict for the respondent here.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH, CROCKETT and HENRIOD, JJ., concur.